HILL (DEN v.). See Case No. 3,784.

---

## Case No. 6,489.

### HILL v. DUNKLEE.

[1 MacA. Pat. Cas. 475.]

Circuit Court, District of Columbia. Jan., 1857.

PATENTS — INTERFERENCE PROCEEDINGS — COMPETENCY OF WITNESSES — DISCLAIMERS — PRIORITY OF INVENTION—LACHES.

[1. An inventor who is a party to the record, and who has a real interest in the case until a short time before he is to be examined as a witness, cannot become a competent witness by assigning his invention.]

[2. It is irregular and suspicious to call a witness twice to the same point, and cannot be allowed except for cause shown.]

[3. A disclaimer which, taken in the connection in which it occurs, is limited to the application in which it is made, does not prevent the inventor from claiming, in a subsequent application, the matter before disclaimed.]

[4. In the sense of the patent law of 1836 (5 Stat.117), he is the first inventor who, by words, drawings, or otherwise, first makes known the principle of the invention, so that another would be able from such description to put it in use; and it is not necessary that the inventor should have put it into practical operation. Having done this much, he is entitled, as against a later inventor, to obtain a patent, provided he uses reasonable diligence in perfecting and maturing the invention and filing his application.]

[Cited in Lamson v. Martin, 159 Mass. 562, 35 N. E. 78.]

[5. A delay of about three years, during which the inventor was engaged in constructing a machine capable of producing a manufactured article, which was the subject of the invention, held not an unreasonable delay, such as would bar his right as against a subsequent inventor, who first made application for a patent.]

[This was an appeal by Samuel L. Hill, assignee of Anson A. Swift, from a decision, on interference, in favor of Henry Dunklee, assignor to Harold Kelsea, in respect to invention of an improved manufacture of sewing silk, twist, or cord.]

F. A. Brooks, for appellant.
Edmund Burke, for appellee.

MORSELL, Circuit Judge. The appellant filed his application and specification on the 15th of February, 1856, in which he thus describes his invention: "My invention consists in a new or improved manufacture of sewing silk, twist, or cord—it being made by interlooping a single strand, so as to lay together, and side by side, between each two adjacent interloopings of it, three straight portions of the strand. After this has been done, the whole is to be twisted together, so as to form one single line or cord." The claim is described in these words: "I do not claim a manufacture of silk twist, as made by laying and twisting together three different strands, but what I do claim is my improved manufacture of twist, sewing silk, or cord, as made by looping or interlooping a single strand, and subsequently twisting it into one line or cord." The specification itself is referred to for a particular description of the mode. The petition and specification of the appellee appears to have been filed in the patent office on the 17th of December, 1855, for identically the same invention, described in the same terms, and claimed by the appellee likewise, by a description in the same terms: and thus the only matter of difference between the parties is which of them was the first and original inventor; for the purpose of trying which before the commissioner he, according to the established rules of the patent office, appointed a day, and authorized the taking of depositions by each of the parties; upon the return of which depositions the said case was tried before the commissioner, according to the appointment aforesaid thereupon, and on the 9th of June, 1856, he awarded priority of invention to the said Kelsea, assignor to said Dunklee.

The appellant duly filed in the patent office his reasons of appeal from this decision, which are, in substance—First. That the said decision is at variance with what both parties understood the claim to be, i. e., a new manufacture and a new fabric. Second. Because the priority of invention was awarded to Kelsea, though he did not (till long after Swift) ever form the requisite loop by the use of the material necessary to produce sewing silk, viz., strands or threads of manufactured silk. Thirdly. Because Swift, in February, 1853, first applied the looping process to raw silk, and twisted it to produce sewing silk, and thereby first made the new manufacture, and showed the feasibility of making it in this way. Fourthly. Because Kelsea's testimony by deposition was admitted by the commissioner. Fifthly. Because a controlling influence was given to the testimony of Sullaway, the same having been discredited, it is believed, by other evidence, and having been inconsistent with itself and wholly unworthy of confidence. The sixth and last is a general reason, because against the evidence, &c. The original papers having been laid before me, the case was heard on written argument of the parties.

The fourth and fifth reasons, being in their nature preliminary, will be first considered.

Kelsea was certainly a real party in interest to the proceedings and record in this case until a very short time before he was examined as a witness. The rule of law applicable has been several times on former occa-

sions of a similar kind declared by me, and although it has been disregarded, will be repeated and insisted on. In the case of Scott v. Lloyd, 12 Pet. [37 U. S.] 149, the judge, in delivering the opinion of the court, says: "The decision in Willings v. Consequa [Case No. 17,767], where the court held that a party named on the record might be released, so as to constitute him a competent witness, has been cited and relied on in the argument. Such a rule would hold out to parties a strong temptation to perjury, and we think it is not sustained by principle or authority." The testimony of that witness must be rejected as incompetent. From the papers before me, I have reason to believe that the same rule applies to Swift as a witness. His testimony, therefore, must be also rejected.

Next, as to the testimony of the witness Sullaway. It is contended that his second deposition is wholly unworthy of credit, and ought to be entirely rejected. As to the point that sewing silk was successfully made by him soon after his interview with Kelsea, it is contended that his statements on this point are not credible, because Kelsea's idea and talk with him was about a new machine to make silk, and he would not be likely to direct his thoughts to the product, but to the machine. It is not perceived that there is much force in this objection, especially as the machine was an instrumentality intended as part of the means of perfecting the manufacture, and naturally connected with the subject. Second. Sullaway's statements on this point were made in a second deposition made by him in the case: and it is both irregular and suspicious to call a witness twice to the same point; and this is not allowed except for cause, which did not exist in this instance. Kelsea's letter to Sullaway shows absence of good ground for the second deposition. I think this objection must be sustained. The proposition of law which it states is correct. If after a witness has been examined in-chief and cross-examined he might be called up for re-examination, and examined as to new matter, or substantially on the points he had already been examined and cross-examined on, it might protract the proceeding interminably, and it would open a door for practicing with and suborning the witnesses, to the utter perversion of the ends of justice. The re-examination ought, therefore, to be confined to a reaffirmance of the facts already stated and in explanation of the facts stated by the witness upon cross-examination. So I consider the law, which is to be found stated in volume 3 of Starkie (page 1751). He says: "As the object of re-examining a witness is to explain the facts stated by the witness upon cross-examination, the re-examination is of course to be confined to the subject-matter of cross-examination. Where the witness has been cross-examined as to declarations made by him, a counsel has a right on re-examination to ask all questions which may be proper to draw

forth an explanation of the sense and meaning of the expressions used by the witness on cross-examination, if they be of themselves doubtful, and also of the motives by which the witness was induced to use those expressions; but he has no right to go farther, and to introduce matter new itself and not suited to the purpose of explaining either the expressions or motives of the witness." As to the other parts of the objection to this witness' testimony, I have examined with care the various parts of his deposition and that of Atkins, who is supposed to contradict him, and think that, although there are some variances and perhaps inconsistencies, yet, as there has been no extrinsic testimony to impeach his general character for truth, and considering his explanations and apparent frankness and candor, there is not such gross improbability or wilful and corrupt misrepresentations as to afford a sufficient ground to reject his testimony; but as the re-examination, for the reasons before given, was in violation of the rule of evidence, his second deposition must be rejected.

I now proceed to the consideration of the issue between the parties upon the merits.

The invention for which a patent is applied for, as agreed by both parties, is a new or improved manufacture of sewing silk, twist, or cord, the result or product of interlooping a single strand so as to lay together and side by side, between each two adjacent interloopings, three straight portions of the strand, and then twisting them together so as to form one single line or cord. Upon an examination of the testimony on the part of the appellant, without the necessity of stating in detail, I am satisfied it proves that as early as February or March, 1853, Swift showed that he had trebled and twisted from a single strand of silk by looping and interlooping sewing silk, and that there is some evidence from which it may be inferred that he got up a machine for the purpose of twisting, &c. This being so, there is prima-facie evidence that he was the first and original inventor of said manufacture. To destroy the effect of said testimony on the part of the appellant, the appellee has adduced the testimony which will be next considered. And first he relies upon the appellant's being estopped from setting up such a claim as he has done in this case by the following acknowledgment contained in the specification of the appellant, filed as the ground of his application for a patent, and in said patent for his machine for trebling and twisting sewing silk from a single thread, in the year 1855: "I do not claim the principle of trebling a thread or strand of silk by enchaining loops formed therein," &c. The authorities cited and relied on would be entirely sufficient to sustain the position; but in the connection in which it stands, the general sense must be restrained to the purpose for which it was used, that is, that it was so to be considered in that application.

The appellee contends that in the summer

of 1852 he had conceived and described the idea of manufacturing sewing silk trebled from a single thread, and that he has a right to date his invention from that period; that when the idea was so conceived, explained, and actually demonstrated by experiment, the idea of twisting was, of course, combined with it, if not expressed and actually done, for the three-stranded cord thus made from one thread could not be sewing silk or silk twist until it had undergone the operation of twisting. The witness Sullaway testifies that Kelsea, at his (Sullaway's) house in Canton, Massachusetts, in December, 1852, said he had got an idea of a twist machine that he was getting up to match three threads from one bobbin or thread; he showed him how he was going to do it, and if it worked as he expected, he was going to get a patent for it; he showed him with a spool of cotton how he was going to loop it to make it silk and twist; he (the witness) fully comprehended it, and tried the experiment after Kelsea had showed him, and had done it several times. In explaining by words how the operation of trebling silk from a single thread was performed, as shown by said Kelsea in 1852, witness says that it was done by looping; he says that he had been engaged in the manufacture of sewing silk about ten years. In answer to a cross-interrogatory, he says that he was enabled to fix the time to be December, 1852, by reckoning from the time he lived in the house where he then resided; that he has a memorandum of the time when he moved. In further answer to cross-interrogatory, he says that he thinks he tried experiments himself in trebling, the same week of the interview, and that the looping was successful. On this point, Phebe A. Kelsea, in her deposition, says that she first heard her father speak of making sewing silk of a single thread trebled in the manner above described in the summer of 1852—"as early as that." This, then, so far as it respects the year, if not the month, is corroborative of what Sullaway testifies to, and I think must be considered as satisfactorily proved. It is true it comes from the party who claims to be the inventor, but from the necessity of the case it must be allowed. The idea must have been conceived at least as early as this period, or it would have been impossible to have described it, especially so, as the witness is shown by Kelsea the way in which his idea was to be carried out, forming a part of the res gestae. And this being all the evidence on the part of the appellee to prove the particular point of the origin or date of the invention, is it sufficient for that purpose? In the argument on the part of Kelsea it is contended that it amounts to proof that the invention was complete when it was explained and demonstrated to Sullaway. On the part of Swift, it is contended that in a case such as this, of two rival inventions, priority cannot be awarded to one so long as anything remains to be done to render the idea or conception certain, successful, or practicable. The plan must be tried and tested, and something complete and practicable must be arrived at. A practical result, a new thing, must be attained, and not an idea only, to constitute priority of invention. To support the position thus taken, the counsel for the appellee has referred to several decisions by Judge Story and Judge Nelson. A brief notice will be taken of them. The first is the case of Washburn v. Gould [Case No. 17,214]. That was a case of a claim set up as a prior inventor by the defendant in his defense to an action brought for a violation of the patent right of the plaintiff. The judge states as a reason for his decision that the prior invention so claimed had not been proved satisfactorily; that the plaintiff had a right to rest upon his patent, which was prima-facie evidence that he was the first and original inventor; and that if the defendant's evidence was doubtful, the plaintiff was entitled to the benefit of it. In the case before me there has been no patent granted, but the reverse; it has been refused by the commissioner. This reason for the presumption cannot, therefore, arise here.

There are two passages relied on, to be found in Washburn v. Gould [supra]. The passages quoted are: "Whoever perfects a machine, &c., is the real inventor." "He is the inventor who first brought the machine to perfection and made it capable of useful operation." Judge Story refers to Pennock v. Dialogue [Case No. 10,941]. The terms used in the passages alluded to are certainly very broad; but upon a careful examination of the case, it will be found that in the last part of it, where the judge applies the law to the facts specifically, the decision rests upon the grounds I have before mentioned of the presumptive evidence in favor of the patentee. Pennock v. Dialogue does not support the principle to the extent mentioned in the passages quoted by the appellee's counsel. In the case of Woodcock v. Parker [Id. 17,971], the passage referred to is: "The first inventor who has put the invention into practice, and he only, is entitled to a patent." The same language is used in the case of Bedford v. Hunt [Id. 1,217]. The decisions were made by the same learned judge. With respect to the first case (Woodcock v. Parker), the judge says: "In the present case, as the defendants claim their right to use the machine in controversy by a good derivative title from Samuel Parker, if the jury are satisfied that said Parker was the first and original inventor of the machine, the plaintiff cannot, under all the circumstances, maintain his action, notwithstanding he may have been a subsequent inventor, without any knowledge of the prior existence of the machine or communication with the first inventor. It is not necessary to consider whether, if the first inventor should wholly abandon his invention, and never reduce it to practice, so as to produce useful effects, a second inventor might not be

entitled to the benefit of the statute patent, because here there is not the slightest evidence of such abandonment.". That is the point of the decision; and, as there is no evidence of abandonment in the present case, I do not perceive how it can answer the appellant's purpose. The decision in the case of Bedford v. Hunt [supra] has been fully and ably considered by Judge Cranch in the case of Heath v. Hildreth [Case No. 6,309], with which I entirely agree. The substance of that opinion on the present point is that the statute of 1836 carefully excludes from the fifteenth section the words "but had been in use." This, like the sixth section of the act of 1793 [1 Stat. 322], states the matters which may be given in evidence under the general issue in an action for infringing the plaintiff's patent; that none of the patent laws (statutes) have ever required that the invention should be in use, or reduced to actual practice, before the issuing of the patent, otherwise than by a model, drawings, and specifications, containing a written description of the invention and the manner of making, using, and constructing the same, &c.; and that the statute does not limit any time in which the inventor must apply for a patent, nor does it declare a forfeiture by reason of any delay. The delay, therefore, seems to be unimportant, unless it amounts to evidence of abandonment of the claim. The other two cases referred to [Many v. Jagger, Case No. 9,055, and Parkhurst v. Kinsman, Id. 10,-757], decided by Judge Nelson, appear to have been decided on the same principle laid down in Washburn v. Gould, already noticed.

The rule of patent law as contended for by the appellant's counsel seems to be rested upon the unqualified expressions used in the cases cited as applicable to all cases. It will be found, however, from a more particular consideration that this cannot be so, and that it can be applicable only in those cases where, from a long and unreasonable delay and unsuccessful experiments, or an acquiescence in the invention's becoming public, evidence is furnished of an abandonment by the person claiming to be the first and original inventor; his prior right becomes thereby forfeited and lost. Under our statutes, he only is entitled to a patent who is not only an original inventor, but the first or original inventor, unless, under the circumstances just stated, without knowledge of the first invention, he may be deemed the original inventor, and as such entitled to a patent. An invention being an intellectual process or conception, for the purpose of showing who, in point of time, is the prior inventor, he who first makes it known sufficiently by describing it in words or drawings will be considered to be the first discoverer, and vested with an inchoate right

to its exclusive use, which he may embody, perfect, and make absolute by proceeding to mature it in the manner which the law requires. In this case, therefore, if it even be conceded that the manufacture was not made until completed or perfected, yet if the evidence shows that the appellee has made known to the witness, by describing to him the principle of the manufacture, showed him how it was to be effected, so that he could himself do it, declared his purpose by such means to accomplish the end, and by means of a machine which he would construct perfect the said manufacture; was using reasonable diligence in perfecting and maturing his said invention and making it complete,—it would be most unjust under such circumstances that he should be prejudiced by such necessary delay. If the appellee might, therefore, by describing and manifesting the invention in the year 1852, as before stated, be considered as prior in point of time, has he by any subsequent laches on his part forfeited that right? This is the next part of the subject remaining to be considered. He seems to have considered from the time of the discovery that to make the manufacture available it would be necessary to construct a machine for the special purpose. To do this, required pecuniary means. He was poor, and lacked them. During the years 1853 and 1854 he seems to have been endeavoring to procure such means and to construct the machine; and about the 10th or 15th of November, 1854, with the assistance of his son, and on or about the 20th of November, 1854, or the beginning of the year 1855, the machine was completed, and it is proved that the same was successful and the end accomplished, and that sewing silk was trebled from one strand and twisted. There is also proof that in said interval the appellee showed to several witnesses sewing silk trebled from a single strand and twisted.

Of the difficulty and importance of constructing this machine, the letters of the appellant fully show; and that considerable delay was necessarily occasioned, is to be inferred from the fact that the appellant himself had not even then been able to construct one, though from his desire to purchase he must have deemed it also very important for the purpose. I think, therefore, that the appellant is not chargeable with unreasonable delay; and if not, although it were admitted that he had not perfected the invention in the month of December or June, 1852, yet, when he had done so in the year 1854, his right had relation back to this first discovery, and therefore that the commissioner was correct in awarding priority of invention in this case to the appellee.